## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| _____ | ) | |
| **OAKLAND BENTA,** | ) | |
| **JEFFREY J. PROSSER, and** | ) | |
| **DAWN E. PROSSER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2013-0080** |
| | ) | |
| **CHRISTIE'S, INC.,** | ) | |
| **WILLIAM H. STASSEN,** | ) | |
| **YANN GERON, DAVID MARSHALL** | ) | |
| **NISSMAN, and CHARLES ANTIN,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**Attorneys:**
**Yvette D. Ross-Edwards, Esq.,**
**Jeffrey B.C. Moorhead, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiffs*

**Lawrence H. Schoenbach, Esq.,**
New York, NY
    *For Plaintiff Jeffrey J. Prosser*

**Bernard C. Pattie, Esq.,**
St. Croix, U.S.V.I.
**Samuel H. Israel, Esq.,**
Philadelphia, PA
    *For Defendants Yann Geron*
    *and William Stassen*

**Gordon Rhea, Esq.,**
Mount Pleasant, SC
    *For Defendants Christie's, Inc.*
    *and David Nissman*

## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on two Motions to Dismiss—the first jointly filed

by Defendants Yann Geron and William H. Stassen (Dkt. No. 9), and the second jointly filed by Defendants David Nissman and Christie's, Inc. (Dkt. No. 14).[1] The two motions assert the same legal bases for dismissal, and thus the Court will address the filings together. For the reasons that follow, the Court will grant both motions, dismiss the Complaint for lack of subject matter jurisdiction, and permit Plaintiffs to file an Amended Complaint.

## I.      BACKGROUND

On July 29, 2013, Plaintiffs Oakland Benta, Jeffrey Prosser and Dawn Prosser (collectively, "Plaintiffs") filed a Complaint against Defendants Christie's, Inc. and Charles Antin, a Christie's employee; attorneys William H. Stassen, Yann Geron, and David Marshall Nissman; and "Certain Un-Named Co-Conspirators." (Dkt. No. 1). Plaintiff Benta was described in the Complaint as District Police Chief-St. Croix who was appointed as Training Director-Training Bureau of the Virgin Islands Police Department ("VIPD") in February 2012. *Id.* ¶¶ 17-19. Plaintiffs Jeffrey and Dawn Prosser (the "Prossers"), husband and wife, were residents of St. Croix and owned property at Estate Shoy's (the "Prosser residence"). *Id.* ¶¶ 5, 23. Jeffrey Prosser had previously declared bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. *Id.* ¶ 25. Prior to the events set forth in the Complaint, the Bankruptcy Court of the District of the Virgin Islands (the "Bankruptcy Court") had issued an Order authorizing James P. Carroll (the "Trustee"), as Chapter 7 Trustee of the Estate of Jeffrey J. Prosser, or the Trustee's agents, to have access to the Prosser residence for the purpose of taking possession of valuable wines stored at that location. *Id.*

The Complaint provides that "Christie[']s, Inc. and its employees, including but not limited to defendant Antin, have been the Chapter 7 Trustee's agents," and that Christie's was engaged by

---

[1] In addition, Defendants Nissman and Christie's joined in Defendants Geron and Stassen's motion. (Dkt. No. 14). Defendant Antin, a Christie's employee, did not make a separate appearance.

the Trustee to remove the aforementioned wine. *Id.* ¶¶ 24, 26, 27. Defendants Yann Geron and

William H. Stassen were identified as attorneys employed by Fox Rothschild, LLP, and Defendant

David Nissman was described as a St. Croix attorney. *Id.* ¶¶ 6-8. Plaintiffs alleged causes of action

for violation of their constitutional and civil rights pursuant to 42 U.S.C. §§ 1985(1) and (2) (First

Amendment and Defamation), and Intentional Infliction of Emotional Distress. (Dkt. No. 1).

The Complaint alleges that, on July 29, 2011, "Benta was present at the residence of Mr.

and Mrs. Jeffrey J. Prosser. . . for purposes of allowing representatives of Christie's, Inc. to enter

the Prosser Residence wine storage area to package, take possession of, and remove all wines then

stored in that area." *Id.* ¶¶ 23, 24. Over an hour later, the Christie's representatives, including

Defendant Antin, left without taking possession of the wine, *id.* ¶ 29, which Christie's declared

was "ruined." *Id.* ¶ 32. After the Christie's employees left, Benta inspected the wine storage area

and noticed that the window air conditioning unit was unplugged. He plugged the unit back in. *Id.*

¶ 30.

Believing that a crime may have been committed due to the unplugging of the air

conditioner which caused the wine to be ruined, Benta reported the "July 29, 2011 Incident" to the

VIPD. The three-page Offense Report, authored by Reporting Officer Melissa Freeman, was

attached to the Complaint. *Id.* ¶ 33; Dkt. No. 1-2. The Offense Report indicates, *inter alia*, that

inspectors from Christie's had come to the Prosser residence, by court order, on July 29, 2011 to

inspect and transport the wine kept on the property; and that, fifteen minutes after they left, Benta

noticed that the air conditioner was unplugged and immediately plugged it back in and secured the

room. (Dkt. No. 1-2). Officer Freeman concluded the report by stating: "I advised Mr. Benta that

this was a civil matter and that it would have to be dealt with in civil court." *Id.* She requested that

the case be closed. *Id.*

The Complaint goes on to say that VIPD Officer Cuthbert Cyril continued to investigate

the incident (Dkt. No. 1, ¶ 36), and a Virgin Islands Assistant Attorney General ("AAG") signed two "Forthwith Subpoenas," dated September 27, 2011, directing Antin and another Christie's employee—both of whom were in New York—to appear before Officer Cyril in the Virgin Islands regarding the July 29, 2011 incident. *Id.* ¶ 37; Dkt. No. 1-3. On October 10, 2011, Officer Cyril supplemented the initial Offense Report with a statement from another witness present with Benta on July 29, 2011 who saw the air conditioner unplugged. (Dkt. No. 1-4). The supplement concluded with a request from Officer Cyril that "this case be left open pending contact with the [Christie's] inspectors." (Dkt. No. 1, ¶ 38; Dkt. No. 1-4). On November 3, 2011, Officer Cyril sent a letter to Mrs. Prosser on "Office of the Police Commissioner" stationery, updating her on the status of the criminal investigation and requesting contact information for the Chapter 7 Trustee. *Id.* ¶ 39, Dkt. No. 1-5.

The Complaint further states that, on November 21, 2011, the Attorney General's Office issued a "Forthwith Subpoena" to the Trustee, requiring him to give testimony regarding the July 29, 2011 incident. *Id.* ¶ 41. According to the Complaint, "[r]ather than co-operate with the police investigation," the Trustee, through Stassen, moved to quash the subpoena. *Id.* ¶ 42. The Complaint quotes a statement made by Stassen in a Bankruptcy Court proceeding in which he questioned the legitimacy of the investigation being conducted by Officer Cyril, and stated that the Trustee believed Benta's involvement in the issuance of the subpoena showed "a concerted effort by the Prossers and their agent Mr. Benta, to manipulate local law enforcement and interfere with this [Bankruptcy] Court's jurisdiction[.]" *Id.*[2]

---

[2] Stassen's statement to the Bankruptcy Court, as set forth in the Complaint, is as follows:

> Simply put, there is no 'crime' being investigated in the Virgin Island[s] to which the Trustee may testify or provide information. Nor is there any evidence or a good faith basis to assert that any crime was committed or is being investigated related to the Trustee, in connection with the dissipation of the estate's Wines stored at the

The Complaint provides that, at a December 8, 2011 Bankruptcy Court proceeding, an AAG—presented by Attorney Stassen—represented to the Court that her office had no knowledge of the criminal investigation of the July 29, 2011 incident, despite the issuance of the three subpoenas by another Assistant Attorney General, and despite Stassen's knowledge of those subpoenas. *Id.* ¶¶ 43, 44. On December 9, 2011, Officer Cyril filed another Supplement to the Police Department's Report of the July 29, 2011 incident, indicating that Stassen had supplied him with a Bankruptcy Court transcript in which the Court ordered the turnover of the wine to the Trustee. (*Id.* ¶45; Dkt. No. 1-6). Cyril again requested that "this case be turned over to the Criminal Investigation Bureau," *id.,* and made a similar request in a third supplement filed on December 13, 2011. (Dkt. No. 1-8).

With regard to the individual Defendants, the Complaint alleges that, on December 12, 2011, during a break in the deposition of Jeffrey Prosser concerning the July 29, 2011 incident, in which Stassen was acting "in his capacity as attorney for the Chapter 7 Trustee," Stassen stated to Prosser that "your *little friend* [Plaintiff Benta] has gotten himself into trouble he cannot get out of." *Id.* ¶ 46. The Complaint further provides that, during a December 18, 2011 deposition, Antin

---

[Prosser residence].

To be clear, it is not apparent that the [Virgin Islands Police Department] is aware of or sanctions the so-called 'investigation' that is being conducted by a police officer in the police training bureau who works with Mr. Benta, Mr. Prosser's agent.

The Trustee also has reason to believe that Mr. Benta, who was directly involved with the Wines at the [Prosser residence], had a hand in the issuance of the Subpoena. These egregious circumstances indicate a concerted effort by the Prossers and their agent, Mr. Benta, to manipulate local law enforcement and interfere with this Court's jurisdiction and the mandate of a federally-appointed chapter 7 trustee. This situation requires the Court's immediate intervention.

(Dkt. No. 1, ¶ 42).

admitted that, on July 29, 2011, he had instructed a colleague from Christie's who accompanied him to the Prosser residence, to unplug the air conditioner in the wine area, and the colleague unplugged it. (*Id.*, ¶ 49). With regard to Geron, the Complaint alleges that, in a September 9, 2011 Bankruptcy Court proceeding, Geron stated, in response to the allegation that the Chapter 7 Trustee's agent had unplugged the air conditioner: "We have assured ourselves *by discussing this with Christie's* that the allegation[s] certainly insofar as the trustee is concerned are wholly untrue and that will prove itself up in connection with the hearings that are currently set up." *Id.* ¶ 34. The Complaint also alleges that in December 2011, Benta was approached by Nissman who suggested that Benta terminate the investigation of the July 29, 2011 incident, but Benta refused. *Id.* ¶¶ 53, 57.

According to the Complaint, on December 27, 2011, the VIPD Acting Police Commissioner wrote Benta to inform him that a recommendation for his termination had been submitted to the Governor's Office regarding his "actions of July 29, 2011 which led to an investigation of the alleged criminal act at the Estate Shoys home of Jeffrey Prosser." *Id.* ¶ 60. The letter, a copy of which was attached to the Complaint, states that the investigation was pursued despite the fact that the original police report indicated the incident was of a non-criminal nature; that Benta, who supervised Officer Cyril, allowed him "to participate and be involved in obstructing the proceeding of the Bankruptcy Court"; that the November 3, 2011 letter Officer Cyril sent to Mrs. Prosser was "written on stationery reserved for use only by the Office of the Police Commissioner [and] was sent without the approval of the Police Commissioner"; and that despite allowing Officer Cyril to secure subpoenas through the Attorney General's Office, an AAG testified she had no knowledge of the criminal investigation. (Dkt. No. 1-9). The letter indicated that Benta's course of conduct violated VIPD standards, called into question the VIPD's investigatory process, violated the Code of Ethics, and brought disfavor upon the VIPD. *Id.* Benta

6

was suspended without pay effective December 27, 2011. (Dkt. No. 1, ¶ 63; Dkt. No. 1-10). The Complaint states that, in 2013, after the Bankruptcy Court entered a verdict against the Prossers—"in which Benta was to be a material witness"—Benta was reinstated as a VIPD Officer "and the false charges against him were withdrawn by the Virgin Islands Government." *Id.* ¶ 81.

The remaining paragraphs of the Complaint characterize the facts previously set forth. *Id.* ¶¶ 64-81. For example, the Complaint states, *inter alia*, that the allegations against Benta, cited in the Acting Police Commissioner's letter, were "false and misleading," and meant to injure Benta while he was engaged in his duties as a police officer and to interfere with him as a witness for the Prossers; that the letter, which resulted in Benta's wrongful suspension, was instigated at the insistence of Stassen and/or Geron acting through Nissman; that Geron's statement that Benta was on Prosser's payroll was false and was submitted to the Court for the purpose of "intimidating and defaming and discrediting Oakland Benta personally and as a witness for Mr. and Mrs. Prosser, thereby interfering with [their] ability to present their case to the federal court"; that the AAG's December 8, 2011 testimony that she had no knowledge of the criminal investigation was "false and misleading"; and that, as a direct result of the actions of Geron, Stassen, Christie's, Nissman, Antin, and other unnamed co-conspirators, the Bankruptcy Court was wrongfully convinced that there was no good faith basis for Benta's allegations and for the ongoing criminal investigation. *Id.*

The Complaint sets forth four causes of action. *Id.* ¶¶ 82-98. Counts I and II concern Benta. Count I—Violation of Constitutional and Civil Rights (First Amendment, 42 U.S.C. § 1985(1) and (2), Defamation)—alleges that Defendants, jointly and/or individually and/or in conspiracy with others, through their actions intentionally deprived Benta of his constitutional rights to free association and public speech by: (a) causing his termination from his position as a VIPD Officer; (b) injuring him while he was engaged in and on account of his lawful discharge of duties as a

police officer pursuant to 42 U.S.C. § 1985(1); (c) intimidating him from testifying freely as a witness in an ongoing court proceeding on behalf of Mr. and Mrs. Prosser, in violation of 42 U.S.C. § 1985(2); and (d) defaming him and wrongfully and prematurely terminating the investigation of the July 29, 2011 incident which, if it had gone forward, would have established the wrongful conduct of Christie's in attempting to destroy Mrs. Prosser's property; vindicated Benta as a truthful witness; and assisted the effective presentation of the Prossers' case in Bankruptcy Court. *Id*. ¶¶ 83-86. In Count II, Intentional Infliction of Emotional Distress, the Complaint asserts that Defendants' "express intent was to inflict harm" upon Benta; such actions did in fact harm him; and he suffered emotional distress, economic loss, and pecuniary injury. *Id.* ¶¶ 90-91.

Counts III and IV of the Complaint are directed to the harms allegedly suffered by the Prossers. Count III—Violation of Constitutional and Civil Rights (42 U.S.C. § 1985(1) and (2))—alleges that the actions of Defendants individually and in conspiracy with each other and/or other unnamed co-conspirators, were undertaken for the purpose of deterring Benta through intimidation from testifying freely as a witness in an ongoing court proceeding on behalf of the Prossers in violation of 42 U.S.C. § 1985(2), and that the actions were undertaken with the actual intent to injure the Prossers. *Id.* ¶¶ 93-94. With regard to Count IV, Intentional Infliction of Emotional Distress, the Complaint states that "it appears that Defendants' express intent was to inflict harm" upon the Prossers; the Prossers each suffered emotional distress and harm, causing them injury; the Prossers had to defend the false representations that Benta's affidavit was "wholly untrue"; and the Prossers were hampered in their ability to present an effective case in federal court, resulting in a damages award against them in excess of $500,000.00. *Id.* ¶¶ 96-98.

Geron and Stassen filed a Motion to Dismiss, contending that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, because Plaintiffs did not comply with Supreme Court precedent set forth in *Barton v. Barbour*, 104 U.S.

126 (1881), and its progeny, which provides that, before a lawsuit is brought against a receiver or bankruptcy trustee, or the trustee's attorneys or agents, "leave of court by which [the Trustee] was appointed must be obtained" (the "*Barton* doctrine"). (Dkt. No. 10 at 5, quoting *In re VistaCare Group, LLC,* 678 F.3d 218, 224-25 (3d Cir. 2012)). In the alternative, Geron and Stassen argue that the Complaint should be dismissed pursuant to Rule 12(b)(6) because Plaintiffs failed to state a claim under their causes of action. *Id.* at 7-20. Geron and Stassen attached to their Reply Brief a copy of the Bankruptcy Court's February 11, 2011 Turnover Order and Opinion, ordering the wines and other items to be turned over to the bankruptcy estate; excerpts from the September 9, 2011 and December 8, 2011 Bankruptcy Court transcripts; and a copy of the Bankruptcy Court's September 18, 2012 Contempt Memorandum Opinion, finding the Prossers in contempt of the Bankruptcy Court's Turnover Order and sanctioning them $434,875.00 for damages to the Estate based on the destruction and dissipation of Prosser's wine collection, and an "as yet undetermined" amount in fees and costs for the Trustee's counsel and experts. (Dkt. Nos. 32-1, 32-2, 32-3, 32-4).

Nissman and Christie's also filed a Motion to Dismiss, in which they joined in Geron's and Stassen's motion, as well as made similar arguments under Rules 12(b)(1) and 12(b)(6). (Dkt. No. 14). Nissman and Christie's attached to their brief a Declaration by Nissman describing his role in the Chapter 7 bankruptcy proceeding; an August 17, 2010 Bankruptcy Court Order awarding legal fees to the Trustee; and the same September 18, 2012 Bankruptcy Court Contempt Memorandum Opinion that Geron and Stassen attached to their motion. (Dkt. Nos. 14-1, 14-2, 14-3).

Plaintiffs responded that the illegal actions asserted—obstruction of justice, interference with a witness in a federal court proceeding, and interference with a police officer in the performance of his official duties—are "*ultra vires*" acts which fall outside the *Barton* doctrine and, thus, the Court has jurisdiction over this case. (Dkt. No. 27 at 12-15). They also dispute Defendants' arguments that they failed to state a claim on their causes of action. *Id*. at 15-21.

9

## II.    APPLICABLE LEGAL PRINCIPLES

### A.  Rule 12(b)(1)

Defendants have brought their motions to dismiss pursuant to both Rule 12(b)(1), lack of subject matter jurisdiction, and Rule 12(b)(6), failure to state a claim. When a court is faced with both Rule 12(b)(1) and Rule 12(b)(6) motions to dismiss, "as a general rule, the correct procedure is to consider dismissal on the jurisdictional ground first 'for the obvious reason that if the court lacks jurisdiction to hear the case then *a fortiori* it lacks jurisdiction to rule on the merits.'" *Richardson v. Monaco (In re Summit Metals, Inc.)*, 477 B.R. 484, 494 (Bankr. D. Del. 2012) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 895 n.22 (3d Cir. 1977)). Because the *Barton* doctrine is "jurisdictional in nature . . . dismissal under *Barton* should be [determined] pursuant to Fed. R. Civ. P. 12(b)(1) rather than 12(b)(6)." *Satterfield v. Malloy*, 700 F.3d 1231, 1234 (10th Cir. 2012); *see also Lawrence v. Goldberg*, 573 F.3d 1265, 1269 (11th Cir. 2009); *Summit Metals,* 477 B.R. at 503 (finding complaint void ab initio for violation of *Barton* doctrine and dismissing it for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)).

In analyzing a Rule 12(b)(1) motion, a court must first determine whether the motion presents a "facial" or a "factual" attack on the claim at issue "because that distinction determines how the pleading must be reviewed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Id.* at 358. On the other hand, a factual attack

> is an argument that there is no subject matter jurisdiction because the facts of the case—and here the District Court may look beyond the pleadings to ascertain the facts—do not support the asserted jurisdiction. So, for example, while diversity of

> citizenship might have been adequately pleaded by the plaintiff, the defendant can submit proof that, in fact, diversity is lacking. . . . In sum, a facial attack contests the sufficiency of the pleadings, whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.

*Id.* (internal quotation marks and citations omitted); *see Knight v. United States*, 2009 WL 1408524, at *2 (M.D. Pa. May 19, 2009) (finding that Rule 12(b)(1) motion "presents a factual attack on jurisdiction because Defendant's challenge does not concern an alleged pleading deficiency, but Plaintiffs' failure to comport with the jurisdictional requirements of the [Federal Tort Claims Act].") (citing *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007))

Defendants have launched a factual, rather than a facial, jurisdictional attack, challenging the actual failure of Plaintiffs' claims to comport with the jurisdictional prerequisites contained in the *Barton* doctrine. In this regard, Defendants argue that the actions at issue were performed in their professional capacities as counsel to, or agents of, the Chapter 7 Trustee, and therefore leave of the Bankruptcy Court was required prior to the filing of the instant Complaint. Although there is no factual dispute that Plaintiffs did not seek such permission, the factual dispute arises as to whether Defendants' actions fall within the *ultra vires* exception to the *Barton* doctrine. *See In re Summit Metals*, 477 B.R. at 494 ("Here, the Trustee Defendants' challenge is factual, although there is no dispute that [Plaintiff] failed to request (and receive) [the Bankruptcy] Court's leave before he filed suit" pursuant to *Barton*).

Having determined that Defendants have launched a factual Rule 12(b)(1) attack on the Complaint, the Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. In this regard, the Court may rely on the Complaint, exhibits attached to the Complaint, and exhibits attached to Defendants' briefs. *See Gould Electronics Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000) (opining that in factual

Rule 12(b)(1) challenge, a court may weigh and "consider evidence outside the pleadings.'"). In a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff [has] the burden of proof that jurisdiction does in fact exist." *Mortensen*, 549 F.2d at 891.

### B. The *Barton* Doctrine

In *Barton v. Barbour*, the Supreme Court held that before a lawsuit can be brought against a court-appointed receiver, "leave of the court by which [the receiver] was appointed must be obtained." *Barton*, 104 U.S. at 127. Although *Barton* applied to a receiver and not a bankruptcy trustee, "[t]he trustee in bankruptcy is a statutory successor to the equity receiver and. . . [j]ust like an equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code." *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998). The *Linton* Court explained the policy implications behind this leave of court requirement:

> If [the trustee] is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded . . . . Without the requirement [of leave], trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive . . . . Furthermore, requiring that leave to sue be sought enables bankruptcy judges to monitor the work of the trustees more effectively.

*Id.*

In *In re VistaCare Group, LLC*, the Third Circuit joined every other circuit that had previously addressed the matter in extending the *Barton* doctrine beyond equity receivers to bankruptcy trustees. *VistaCare,* 678 F.3d at 224-25. The *VistaCare* Court held that "leave of the bankruptcy court is required" before instituting an action against a bankruptcy trustee for acts done

in the trustee's official capacity." *Id.* at 224. Absent permission from the appointing court, "no other court would have jurisdiction to hear the suit." *Id.* at 225. The *VistaCare* opinion left no doubt that the *Barton* doctrine "has continuing validity" in the Third Circuit. *Id.*

Several other courts have applied the *Barton* doctrine in suits brought not only against bankruptcy trustees, but also against other bankruptcy court appointed or approved individuals for acts taken in their official capacities, such as counsel for the trustee or auctioneers, who assist the Trustee with his or her duties. *See, e.g., McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012) (holding *Barton* applied to claims against counsel for trustee because counsel's actions were taken in context of attempting to prove adversary action); *Benton v. Cory*, 474 F. App'x 622, 623 (9th Cir. 2012) (affirming district court's conclusion that, under *Barton*, the court lacked subject matter jurisdiction over plaintiff's claims against bankruptcy trustee and his counsel); *Lawrence v. Goldberg*, 573 F.3d 1265, 1269-70 (11th Cir. 2009) (holding that "the *Barton* doctrine applies to actions against officers approved by the bankruptcy court when those officers function as the equivalent of court appointed officers" by helping the Trustee execute his official duties—such as trustee's court-approved attorneys, an investigator retained with court approval, and a creditor under court-approved financing agreement who agreed to finance trustee's efforts to bring property into estate) (internal quotation marks omitted); *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 321 (6th Cir. 2006) (holding that the *Barton* doctrine "applies to trustees' counsel as well as to trustees themselves"); *Carter v. Rodgers*, 220 F.3d 1249, 1252 n.4 (11th Cir. 2000) (antique company that court had appointed to sell property of debtor was covered by *Barton* doctrine); *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1241 (6th Cir. 1993) (ruling that "as a matter of law, counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, [who] act at the direction of the trustee and for the purpose of administering the estate or protecting its assets . . . The protection that the leave

13

requirement affords the Trustee and the estate would be meaningless if it could be avoided by simply suing the Trustee's attorneys."); *Lunan v. Jones (In re Lunan)*, 489 B.R. 711, 724 (Bankr. E.D. Tenn. 2012) (holding that *Barton* doctrine applies to bankruptcy court-appointed auctioneer, the '"functional equivalent of a trustee"') (quoting *DeLorean*, 991 F.2d at 1241 and citing other cases so holding); *Falch Props., LLC v. Walnut Capital Real Estate Servs., Inc. (In re Brownsville Prop. Corp., Inc.),* 473 B.R. 89, 91-92 (Bankr. W.D. Pa. 2012) (applying doctrine to real estate professionals appointed by court to assist bankruptcy trustee); *Equipment Leasing, LLC v. Three Deuces, Inc.*, 2011 WL 6141443, at *3 (E.D. La. Dec. 9, 2011) (doctrine applied to auctioneer appointed by bankruptcy court).

The *Barton* doctrine has also been applied to protect agents of trustees who were not court appointed or approved from lawsuits without leave of the bankruptcy court. *See, e.g., Wells Fargo Fin. Leasing, Inc. v. Jones*, 2015 WL 1393257, at *3-*5 (W.D. Ky. Mar. 25, 2015) (holding that because defendant acted as bankruptcy trustee's agent in performing duties at the direction of and in furtherance of the trustee's responsibilities, claims asserted against defendant were essentially clams against trustee, and court lacked jurisdiction over the claims under *Barton* doctrine); *Price v. Deeba*, 2014 WL 4660810, at *8 (W.D. Okla. Sept. 17, 2014) (granting motion to dismiss based upon *Barton* doctrine to "the real estate management companies employed by the trustee."); *Whitaker v. Annamalai (In re Hindu Temple & Cmty. Ctr. of Ga., Inc.*), 502 B.R. 881, 890 (Bankr. N.D. Ga. 2013) ("It would be a grave mistake to limit the *Barton* doctrine only to cases in which a trustee or his professional is a named party to litigation. . . . In evaluating the limits of the *Barton* doctrine, the Court looks to the purpose and potential effect of the Complaint and the plausibility of the claims it asserts against persons closely associated with the Trustee."); *Ariel Preferred Retail Group, LLC v. CWCapital Asset Mgmt.*, 883 F. Supp. 2d 797, 817 (E.D. Mo. 2012) (property management company engaged by receiver could not be sued for alleged willful and malicious

acts without permission from appointing court).

The remedy for suits brought in violation of the *Barton* doctrine is dismissal. *In re VistaCare Grp., LLC*, 678 F.3d at 232-33 (absent permission from the appointing court, "no other court would have jurisdiction to hear the suit.").

The *Barton* doctrine contains two limited exceptions: a statutory exception pursuant to 28 U.S.C. § 959(a), and an *ultra vires* exception. The statutory exception permits suits against trustees without leave of the appointing court "with respect to any of their acts or transactions in carrying on the business connected with such property"—*i.e.,* when the trustee actually runs the bankrupt business—but not when the trustee "performs administrative tasks necessarily incident to the consolidation, preservation, and liquidation of assets in the debtor's estate." *Lebovits v. Scheffel (In re Lehal Realty Assocs.)*, 101 F.3d 272, 276 (2d Cir. 1996). The *ultra vires* exception—upon which Plaintiffs rely here—is the converse to the *Barton* doctrine. Since the *Barton* doctrine only protects the trustee for acts "done in the trustee's official capacity and within the trustee's authority as an officer of the court," *DeLorean*, 991 F.2d at 1240, it follows that if a trustee acted beyond the scope of a court order—*i.e., ultra vires*—the trustee is not so protected.

"'The situation in which trustees have been most commonly found to have acted outside of their authority is in seizing property which is found not to be property of the estate.'" *Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie)*, 716 F.3d 404, 415 (6th Cir. 2013) (quoting *Schechter v. Ill. Dep't of Revenue (In re Markos Gurnee P'ship)*, 182 B.R. 211, 217 (Bankr. N.D. Ill. 1995)); *see Barton*, 104 U.S. at 134 (stating "if, by mistake or wrongfully, the receiver takes possession of property belonging to another, such person may bring suit therefor against him personally as a matter of right, for in such case the receiver would be acting *ultra vires*."); *Teton Millwork Sales v. Schlossberg*, 311 F. App'x 145, 147-48 (10th Cir. 2009) (finding that receiver who was authorized by court order to seize defendant's property held in the name of Teton

Millwork Sales, an entity in which defendant held a 25% interest, could be sued without leave of the appointing court when receiver seized 100% of the assets of Teton Millwork Sales); *Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967) ("[A] trustee wrongfully possessing property which is not an asset of the estate may be sued for damages arising out of his illegal occupation in a state court without leave of his appointing court."); *Bowman v. City of Olmsted Falls*, 2016 WL 7368720, at *3 (N.D. Ohio Dec. 19, 2016) (noting that *Barton* doctrine does not apply if "the receiver erroneously takes possession of property belonging to a third party not subject to the receivership.").

Some courts have gone so far as to say that "thus far, courts have only applied the *ultra vires* exception to the actual wrongful seizure of property by a trustee or receiver." *McKenzie*, 716 F.3d at 415; *Kaliner v. Antonoplos (In re DMW Marine, LLC)*, 509 B.R. 497, 507 (Bankr. E.D. Pa. 2014) (observing that "it may be no exaggeration to state that the exception applies only in cases in which a receiver wrongfully seizes or controls non-receivership property."); *Baron v. Sherman (In re Ondova Ltd. Co.)*, 2017 WL 477776, at *10 (N.D. Tex. Feb. 1, 2017) (stating that there were cases where plaintiff argued that the *ultra vires* exception should be "applied in a broader sense than seizure of property," but that it was rare for a court to extend the *ultra vires* exception beyond situations where trustee seizes property found not to be property of the estate).

As discussed below, in view of the broad scope of the *Barton* doctrine and the narrow scope of the *ultra vires* exception, the Court concludes that the *Barton* doctrine applies here.

### III.   DISCUSSION

As a preliminary matter, Plaintiffs do not contest that Christie's and Antin,[3] and Geron and

---

[3] For example, the Complaint asserts that "Christies, Inc. had been engaged by James P. Carroll, the court-appointed Trustee of the Chapter 7 Estate of Jeffrey J. Prosser" (Dkt. No. 1, ¶ 25) and "[a]t all times material to this complaint, Christie's, Inc. and its employees, including but not limited to defendant Antin, have been the Chapter 7 Trustee's agents." *Id.* ¶ 27. In their Opposition

Stassen,[4] are Bankruptcy Court appointed or approved officials or agents of the Trustee. The record

before the Court also establishes that Nissman falls into this same category.[5]  All Defendants had

official roles as the Trustee's counsel or agents assisting the Trustee in the administration of the

Prosser Estate.

The issue here is whether Defendants' actions that form the basis for this lawsuit fall within

or outside their official duties. The record before the Court leads to the conclusion that all

Defendants were acting in their professional roles as agents of the Trustee when the events

underlying Plaintiffs' claims took place. Accordingly, the *Barton* doctrine applies and the

---

to Geron and Stassen's Motion to Dismiss, Plaintiffs describe Christie's as "a court-appointed appraiser and auctioneer in Mr. Prosser's bankruptcy case." (Dkt. No. 27 at 2).

[4] Similarly, with regard to Defendants Geron and Stassen, the Complaint identifies them as attorneys "in the employ of Fox Rothschild, LLP." (Dkt. No. 1, ¶¶ 6, 7). The Bankruptcy Court Order dated August 17, 2010, attached to Christie's and Nissman's Motion to Dismiss, identifies Fox Rothschild LLP as Trustee Carroll's counsel. (Dkt. No. 14-3 at 2). Plaintiffs acknowledge in their Response to Geron and Stassen's Motion to Dismiss that both Geron and Stassen "work for Fox Rothschild, LLP, the law firm appointed to represent Mr. James Carroll, the Chapter 7 Trustee. . . in Mr. Prosser's bankruptcy case." (Dkt. No. 27 at 1-2).

[5] While the Complaint is short on details regarding Defendant Nissman, identifying him only as "an attorney" and St. Croix resident (Dkt. No. 1, ¶ 8), Nissman submitted a Declaration in support of his Motion to Dismiss that more thoroughly explained his role in the Prosser bankruptcy and related matters, and which the Court may consider in a Rule 12(b)(1) factual challenge. He averred that, in the fall of 2011, he was hired to represent Christie's and Antin

> in connection with an unlawful criminal investigation commenced by Oakland Benta against them for actions they had taken in furtherance of instructions from a bankruptcy court litigating the Prosser bankruptcy. Thereafter, the Chapter 7 Bankruptcy Trustee in the Prosser bankruptcy case, Mr. James Carroll, also asked me to represent him in the aforementioned investigation. I agreed, and Mr. Carroll duly initiated a formal request to the Bankruptcy Judge to authorize me to represent Mr. Carroll. Jeffrey Prosser, though his attorney Norman Abood and others, objected. The bankruptcy judge, Judge J. Fitzgerald, overruled the objections and ordered my appointment.

(Dkt. No. 14-1, ¶¶ 2-3).

Complaint must be dismissed.

> With regard to Christie's and Antin, the Complaint provides that, pursuant to an
>
> agreement between the Chapter 7 Trustee and representatives of Mr. and Mrs.
> Prosser, July 29, 2011 at 9 am, was the agreed-upon date and time at which the
> Chapter 7 Trustee or his agents would be allowed access to the Prosser Residence
> for purposes of taking possession of wine stored at that location. The Chapter 7
> Trustee had been authorized by court order to remove the wines from the Prosser
> Residence[.]

(Dkt. No. 1, ¶¶ 26, 27). In addition, the Bankruptcy Court's September 18, 2012 Memorandum

Opinion, appended to Nissman and Christie's Motion to Dismiss, noted that "the Chapter 7 Trustee

directed representatives of Christie's to go to the [Prosser residence] on July 29, 2011, to pick up

and ship the Wines stored there for sale. Christie's reserved the right to physically inspect the

Wines prior to taking them for sale." (Dkt. No. 14-2 at 17). These references indicate that Christie's

and its employee Antin were present at the Prossers' residence on July 29, 2011 at the behest of

the Chapter 7 Trustee in order to remove the wines, which had been found by the Bankruptcy

Court to be part of the bankruptcy estate. It is also apparent that it was understood—including by

the Bankruptcy Court—that as part of this assignment, Christie's had reserved the right to inspect

the wines.

Plaintiffs argue that Christie's and Antin's actions were *ultra vires* because "Christie's was

only authorized to enter the Prosser residence for the purpose of packing and removing the wines

from the Prosser residence; they had no authority to inspect and accept or reject the wines." (Dkt.

No. 1, ¶ 31). The Court rejects this argument, given the statements in the Bankruptcy Court's

September 18, 2012 Memorandum Opinion quoted above.[6] The Bankruptcy Court's explicit

---

[6] The Bankruptcy Court's September 18, 2012 Order was affirmed by this Court. *Springel v. Prosser (In re Jeffrey J. Prosser)*, Civil Action No. 2013-0010 (D.V.I. Feb. 23, 2017), Dkt. Nos. 64, 65.

acknowledgment that Christie's had reserved the right to inspect the wines "prior to taking them for sale," confirms not only that the inspection of the wines, but the natural consequences thereof—including an assessment that they were not fit for sale and the resulting rejection of the wines for sale by the estate, through Christie's—were acts that fell within Christie's and Antin's responsibilities on behalf of the Trustee.

Plaintiffs also claim that Antin admitted during a deposition that he had instructed his associate to unplug the air conditioner in the wine storage area in the Prosser residence on July 29, 2011, and the associate unplugged it. (Dkt. No. 1, ¶ 79). This was the alleged criminal act that launched the purported criminal investigation.

The unplugging of the air conditioner occurred in the context of Christie's and Antin's official duties at the Prosser residence to inspect and pick up the estate property (the wine) on behalf of the Chapter 7 Trustee. It was during that visit to the residence that the air conditioner was unplugged by a Christie's representative for a short period of time. [7] Still, that event occurred within the scope of the representative's duties, given that "the scope of the *Barton* Doctrine is extremely broad," *In re W.B. Care Center, LLC*, 497 B.R. 604, 611 (S.D. Fla. 2013), while the scope of the "ultra vires" exception to the *Barton* doctrine is extremely narrow. *See In re DMW Marine, LLC*, 509 B.R. at 507 (observing that "[o]ver the years, courts have curtailed the scope of *ultra vires* exception to the *Barton* Doctrine. While no court has said as much definitively, it may be no exaggeration to state that the exception applies only in cases in which a receiver wrongfully seizes or controls non-receivership property," and that "all actions for damages against receivers, with the possible exception of damage actions arising from the wrongful seizure of non-

_____

[7] Benta testified that he plugged the air conditioner back in after 15 minutes. (Dkt. No. 32-4 at 19 n.24).

receivership property, are subject to the *Barton* doctrine and fall outside the 'ultra vires' exception to the doctrine.") (citing cases). The Sixth Circuit in *McKenzie* observed that when a court examines whether alleged acts by a trustee or his agents fall within the scope of their authority or are *ultra vires*, the scope of authority is construed broadly, even if the acts are "meritless, without foundation, or brought for ulterior purposes." 716 F.3d at 416. Accordingly, the Court cannot find that Antin's and Christie's actions were *ultra vires* so as to render *Barton* inapplicable. *See Carter*, 220 F.3d at 1253 (where a trustee's wife and trustee-appointed auctioneer bought items of debtor's personal property at auction, and the debtor sued the trustee and auctioneer for breach of fiduciary duty, the suit was barred by the *Barton* doctrine because the claims were based on actions "stemming from [the trustee's and auctioneer's] official bankruptcy duties").

Plaintiffs also allege that other Defendants committed misconduct which this Court concludes occurred in the course of their official duties. For example, most of the allegations against Geron and Stassen involve statements they made during Bankruptcy Court proceedings or during a deposition while they were representing Trustee Carroll. Plaintiffs argue that Geron represented to the Bankruptcy Court that the allegation that the Chapter 7 Trustee's agent had unplugged an air conditioner in the wine storage area at the Prosser residence was "wholly untrue" as would be proved at an upcoming hearing (Dkt. No. 1, ¶ 34). It is also alleged that Geron commented that Benta was "on Mr. Prosser's payroll." *Id.* ¶ 70. When Geron made the statements—even if incorrect—he was advocating in court on behalf of the Bankruptcy Trustee— a textbook example of the protection provided by the *Barton* doctrine. These statements are not, on their face, outside of the scope of counsel's responsibilities as a representative of the Chapter 7 Trustee.

Plaintiffs also take issue with the following statements Stassen (or a witness he presented) is alleged to have made: (1) Stassen represented to the Bankruptcy Court, when moving to quash

the subpoenas to the Trustee, that no crime was being investigated concerning the spoliation of the wines to which the Trustee could testify (*see supra*, at 4, n.2); the investigation conducted into the alleged incident was not legitimate; and Benta and the Prossers were "interfer[ing] with the Court's jurisdiction and the mandate of a federally appointed chapter 7 trustee," (Dkt. No. 1, ¶ 42); (2) an AAG that Stassen presented in Bankruptcy Court stated that her office had no knowledge of a criminal investigation into the July 29, 2011 incident, *id.* ¶ 43; and (3) Stassen commented "in his capacity as attorney for the Chapter 7 Trustee" during a deposition of Mr. Prosser that "your *little friend* [Plaintiff Benta] has gotten himself into trouble he cannot get out of." *Id.* ¶ 46.

The allegations contained in the Complaint, and the materials attached to the Complaint and filings, show unequivocally that Stassen allegedly made his statements while representing the Chapter 7 Trustee, either in Bankruptcy Court proceedings or a related deposition. The AAG witness presented by Stassen also testified in Bankruptcy Court during the presentation by Stassen of the case on behalf of the Trustee. While the alleged statements are not ones with which Plaintiffs agree, they were made in the context of advocating the Trustee's position in legal proceedings and thus cannot be viewed as *ultra vires*.

Finally, with regard to Nissman, the Complaint asserts that, in December 2011, Benta was approached by Nissman who suggested that Benta terminate the investigation of the July 2011 incident. *Id.* ¶ 53. The Complaint also alleges, on information and belief, that Nissman was "working in conjunction with and/or on the instruction of defendant Stassen and/or defendant Geron in his interfering with Mr. Benta's official duties and [Benta's] willingness to testify as a witness for Mr. and Mrs. Prosser in their Federal Court case." *Id.* ¶ 56. Although the Complaint provides few alleged facts to assess Nissman's role in the events described, and to establish whether the alleged acts were within his officially-appointed role, the Declaration filed by Nissman provides the necessary factual context to allow the Court to make this determination. The

Declaration indicates that Nissman acted as counsel for the Chapter 7 Trustee when the events underlying the claims took place. Nissman stated that his assignment as counsel for the Chapter 7 Trustee was to "investigate and determine whether there was an active criminal investigation against my clients with respect to a July 29, 2011 incident involving an inspection of wine at the home of Jeffrey Prosser." (Dkt. No. 14-1 ¶ 4). He declared that the VIPD had concluded the matter was civil in nature; that the VIPD had begun an internal investigation of the officers who had filed reports and applied for 'office subpoenas' which did not have extraterritorial power; and he was of the opinion that issuing the subpoenas against his clients was an abuse of the subpoena power. *Id.* ¶¶ 4, 5. Based on his investigation, Nissman asserted that he was also of the view that Prosser's attorney attempted to use the "criminal investigation" to get the Trustee and his attorneys disqualified and "to thwart the Bankruptcy Court's proceedings concerning the wine turnover and subsequent contempt action." *Id.* ¶ 6.

In assessing this record, the Court concludes that Nissman's investigation occurred in the context of his representation of the Chapter 7 Trustee, and the opinions that he formed about the propriety of the VIPD investigation—whether right or wrong—stemmed from that investigation. Against this backdrop, even if Nissman's request to Benta to terminate the VIPD investigation was "meritless, without foundation, or brought for ulterior purposes," *In re McKenzie*, 716 F.3d at 416, it nevertheless occurred in the context of representing the Trustee who was engaged in recovering estate assets and who—based on counsel's assertion—was confronted with an improper police "investigation" that was impeding the actions of the Trustee. *See Heavrin v. Schilling (In re Triple S Rests., Inc.),* 519 F.3d 575, 578 (6th Cir. 2008) (where trustee sought to obtain approximately $252,000, which he alleged belonged to bankruptcy estate, and allegedly threatened to report plaintiff to U.S. Attorney for criminal charges if he did not pay $240,000 settlement, court found trustee was acting in his official capacity when he made the alleged threat and that *Barton* doctrine

applied). Plaintiffs' allegations—in effect, that Nissman engaged in misconduct during the discharge of his official duties—does not make Nissman's actions *ultra vires* so as to render *Barton* inapplicable. *McKenzie*, 716 F.3d at 415; *Satterfield*, 700 F.3d at 1234-35.

Plaintiffs have also argued that the *Barton* doctrine does not apply because they do not seek damages from the bankruptcy estate itself. (Dkt. No. 27 at 4, 12-13). There is no exception to the *Barton* doctrine for suits against a trustee's agents and/or counsel if the plaintiff is not seeking damages from the bankruptcy estate. The one case Plaintiffs cite as support for that proposition, *In re VistaCare*, does not so hold. Whether Plaintiffs seek damages from the Defendants and not from the estate is, in fact, irrelevant. The purpose of *Barton* is to ensure the bankruptcy process and administration of the estate are not rendered less effective by litigation that has not been approved by the Bankruptcy Court against those involved in the process. *In re Linton,* 136 F.3d at 545-46. Defendants in this action are precisely the parties designed to be protected by *Barton*.

In sum, the Court finds that the *Barton* doctrine bars this suit against the Defendants. Their alleged conduct was undertaken in connection with the administration of the Prosser estate and was not *ultra vires*. Because Plaintiffs did not obtain leave of the bankruptcy court before they filed this lawsuit, the Court lacks subject matter jurisdiction over this action and will dismiss the Complaint pursuant to Rule 12(b)(1).[8]

## IV.   OTHER MOTIONS

### A.  Leave to Amend

In numerous footnotes in their opposition brief to Geron and Stassen's Motion to Dismiss, Plaintiffs request permission to amend their Complaint to add specific allegations—in response to

---

[8] Because the Court finds that it lacks subject matter jurisdiction, it does not reach Defendants' Rule 12(b)(6) arguments for dismissal. *Satterfield*, 700 F.3d at 1234; *Summit Metals*, 477 B.R. at 494.

the subject matter jurisdictional challenge—that Defendants' acts were taken outside the scope of their engagement (Dkt. No. 27 n.6); or to provide specific allegations concerning the alleged conspiracy, defamation, and outrageous conduct claims, relating to the Rule 12(b)(6) challenge. (Dkt. No. 27 nn. 6, 7, 8, 10, 11).

District courts generally must allow a plaintiff leave to amend a deficient complaint prior to dismissal unless doing so would be futile. *Gay v. City of Phila.,* 603 F. App'x 87, 88 (3d Cir. 2015) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)). '"Amendment of the complaint is futile if the amendment will not cure the deficiency in the original [pleading] or if the amended [pleading] cannot withstand a renewed motion to dismiss."' *Citizens Bank of Pa. v. Reimbursement Techs., Inc.*, 609 F. App'x 88, 95 (3d Cir. 2015) (quoting *Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 292 (3d Cir. 1988)).

Here, Plaintiffs seek, *inter alia*, leave to amend to add more allegations that Defendants' actions fell outside of their official roles—*i.e.*, that they were *ultra vires*. It would appear from their brief description that Plaintiffs wish to add more instances of alleged misconduct by Defendants while acting in their various roles as representatives of the Trustee. Pursuant to case law cited above, if the Defendants were acting in those roles, such allegations would not bring their actions within the *ultra vires* exception to the *Barton* doctrine, and would be futile. However, because the Court cannot conclude definitively that any amendments would be futile, the Court will permit Plaintiffs an opportunity to amend their Complaint. Plaintiffs shall file their Amended Complaint on or before April 7, 2017.

### B.  Miscellaneous Motions

Geron and Stassen have filed a Motion for a Hearing (Dkt. No. 47), and Plaintiffs have filed a Motion for Leave of Court to Depose Alvin L. Williams Jr. (Dkt. No. 48) and a Motion for a Hearing on the Motion for Leave of Court to Depose Alvin L. Williams, Jr. (Dkt. No. 51). In

view of the dismissal of the Complaint, the Court will deny these motions as moot.

## V.    CONCLUSION

For the foregoing reasons, the Court will grant both Motions to Dismiss, and will dismiss the instant Complaint without prejudice. (Dkt. Nos. 9, 14). The Court will permit Plaintiffs to amend their Complaint on or before April 7, 2017.

The Court will deny Defendants Geron and Stassen's Motion for a Hearing (Dkt. No. 47), and Plaintiffs' Motion for Leave of Court to Depose Alvin L. Williams Jr. (Dkt. No. 48) and Motion for a Hearing on the Motion for Leave of Court to Depose Alvin L. Williams, Jr. (Dkt. No. 51) as moot.

An appropriate Order accompanies this Memorandum Opinion.

Date: March 17, 2017                    _____/s/_____
                                        WILMA A. LEWIS
                                        Chief Judge