**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| **OAKLAND BENTA, JEFFREY J.** | ) | |
| **PROSSER, and DAWN E. PROSSER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 2013-0080 |
| | ) | |
| **CHRISTIE'S, INC., CHARLES ANTIN,** | ) | |
| **FOX ROTHSCHILD LLP, YANN** | ) | |
| **GERON, WILLIAM H. STASSEN,** | ) | |
| **DAVID M. NISSMAN, and JAMES P.** | ) | |
| **CARROLL,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ——————————————— | ) | |

**Attorneys:**
**Yvette D. Ross-Edwards, Esq.,**
**Jeffrey B.C. Moorhead, Esq.,**
St. Croix, U.S.V.I.
  *For Plaintiffs*

**Lawrence H. Schoenbach, Esq.,**
New York, NY
  *For Plaintiff Jeffrey J. Prosser*

**Bernard C. Pattie, Esq.,**
St. Croix, U.S.V.I.
**Elizabeth C. Viele, Esq.,**
New York, NY
  *For Defendant William Stassen*

**Bernard C. Pattie, Esq.,**
St. Croix, U.S.V.I.
  *For Defendant Yann Geron*

**Gordon Rhea, Esq.,**
Mount Pleasant, SC
  *For Defendants Christie's, Inc.*
  *and David Nissman*

# MEMORANDUM OPINION

**Lewis, District Judge**

THIS MATTER is before the Court on the "Emergency Motion to [] Strike Plaintiffs' Amended Complaint" (Dkt. No. 59) filed by Defendants William H. Stassen and Yann Geron;[1] "Plaintiffs' Resistance to Defendants' Motion to Strike the Amended Complaint" (Dkt. No. 63); the "Joinder by Defendants Christie's, Inc., Antin, and Nissman to Emergency Motion to Strike Plaintiffs' Amended Complaint" (Dkt No. 64); "Defendants William H. Stassen and Yann Geron's Reply in Support of Motion to Strike Plaintiffs' Amended Complaint" (Dkt. No. 66); "Plaintiffs' Motion Supplementing the Record" (Dkt. No. 73); "Plaintiffs' Motion for Judicial Notice Pursuant to the Federal Rules of Evidence, Rule 201, or Motion for Other Miscellaneous Relief;" (Dkt. No. 58); and "Plaintiffs' Motion for Leave to File Under Seal" (Dkt. No. 79).

Upon consideration of the entire record and for the reasons discussed below, the Court will grant Defendants' Motions to Strike and dismiss the Amended Complaint. The Court will also grant Plaintiffs' Motion for Judicial Notice (Dkt. No. 58) to the extent that the Court will consider the judicial dockets and court decisions identified in the Motion, but will deny the Motion to the extent that it seeks judicial notice of disputed facts in those cases. The Court will also deny that Motion to the extent it seeks to unseal records in the criminal case of *United States v. A. Williams*, Case No. 3:2012-cr-033. Finally, Plaintiffs' Motion Supplementing the Record will be granted (Dkt. No. 73), and Plaintiffs' Motion to File under Seal (Dkt. No. 79) will be denied as moot.

---

[1] The Court previously granted Defendants' Motion to Stay the Proceedings pending a decision on the Motion to Strike. (Dkt. No. 62). After granting the Motion to Stay, the Court denied, without prejudice, Plaintiffs' Motion for 18 U.S.C. § 3057 Referral (Dkt. No. 65) and Defendant Nissman's Motion to Dismiss (Dkt. No. 67). *See* Dkt. No. 70.

# I.  BACKGROUND

## A.  The Original Complaint

As described in this Court's Memorandum Opinion and Order entered on March 17, 2017 granting Defendants' Motions to Dismiss (Dkt. Nos. 54; 55), Plaintiffs Oakland Benta ("Benta"), Jeffrey Prosser ("Prosser") and Dawn Prosser ("Mrs. Prosser") (collectively, "Plaintiffs") filed a Complaint in July 2013 against Defendants Christie's, Inc. and Charles Antin, a Christie's employee; attorneys William H. Stassen, Yann Geron, and David M. Nissman; and "Certain Un-Named Co-Conspirators." (Dkt. No. 55 at 2). Plaintiffs' claims arose from the efforts of James P. Carroll ("Trustee Carroll"), the Chapter 7 Trustee of Jeffrey Prosser's Bankruptcy Estate, to recover a collection of wines located at the residence of Prosser and Mrs. Prosser (the "Prossers"), at Estate Shoys on St. Croix in July 2011. *Id.* at 2-3.

As background, Prosser and two businesses he owned and controlled—Innovative Communications Company, LLC ("ICC-LLC") and Emerging Communications, Inc. ("ECI")— filed for Chapter 11 bankruptcy in July 2006 in the Bankruptcy Court for the District of the Virgin Islands (the "Bankruptcy Court"). (Case Nos. 06-bk-30007; 06-bk-30008; 06-bk-30009). A third business owned by Prosser, Innovative Communications Corporation ("New ICC") filed for Chapter 11 bankruptcy in 2007 (Case No. 07-bk-30012). Prosser's individual Chapter 11 case was converted to a Chapter 7 proceeding, and Trustee Carroll was appointed to handle that Estate. Another Trustee, Stan Springel, was appointed as the Chapter 11 Trustee for the Estates of the bankrupt businesses. *See Springel v. Prosser* (*In re Prosser*), No. 3:2013-cv-0087, 2017 WL 721991, at *2-3 (D.V.I. Feb. 23, 2017).

In December 2007, Trustee Springel and Trustee Carroll filed an adversary proceeding against Prosser, Mrs. Prosser, and other Prosser family members asserting that they possessed

property and monies belonging to the various Bankruptcy Estates (the "Turnover Proceeding"). (Bankr. Case No. 3:2007-ap-03010, at 1). Among the property claimed as part of the Estates was a wine collection stored at various Prosser residences and other locations.[2] In February 2011, the Bankruptcy Court determined, following a contested hearing, that the wines possessed by the Prossers were part of Prosser's Bankruptcy Estate. Pursuant to the Bankruptcy Court's Order, the Prossers were directed to turn over the wines to Trustee Carroll. (Case No. 3:2007-ap-03010, Dkt. No. 728 at 133). Trustee Carroll, who had been authorized to employ Christie's earlier in the proceeding, asked Christie's employees to package and move the wine collection from the Estate Shoys residence. (Dkt. No. 55 at 2-3).[3]

In July 2011, the Trustee and Christie's coordinated the date for the turnover of the wine collection with Prosser's attorneys. Plaintiff Benta—who was the District Police Chief of St. Croix and Training Director at the Training Bureau of the Virgin Islands Police Department ("VIPD")— was present at the Prossers' residence when Christie's employees arrived to inspect, collect and transport the wines. *Id.* at 2-3.[4] After being at the Estate Shoys residence for approximately one

---

[2] The Bankruptcy Court issued a Preliminary Injunction directing Prosser and his family members to secure and preserve the wine collection and other disputed property in their possession until the merits of the Turnover Proceeding were decided. *See Springel v. Prosser* (*In re Prosser*), 2017 WL 721991, at *2-3. The Prossers were initially permitted to retain a portion of the wine collection representing Mrs. Prosser's claimed interest—subject to the terms of the injunction—until her ownership claim was resolved by the Bankruptcy Court. *Id.* at *4.

[3] The Bankruptcy Court issued an Order in March 2008 permitting both Trustees to employ Christie's Inc. as Auctioneer of various antiques, collectibles and works of art owned or in the possession of the various Bankruptcy Estates, subject to the Court's final approval of all sales. (Case No. 3:06-bk-30009, Dkt. No. 1454).

[4] Benta had been employed from 2001 to 2008 by one of Prosser's businesses until that business filed for Chapter 11 bankruptcy. After the bankruptcy filing, Trustee Springel terminated Benta's employment. Benta then joined the VIPD in June 2008. (Dkt. No. 1 at ¶¶ 15-16). Benta also was

hour, the Christie's representatives, including Defendant Antin, left the property without taking possession of the wine. Christie's agents stated that the wine was ruined due to its storage at too high a temperature. (Dkt. Nos. 55 at 3; 56 at 22-23).

After the Christie's employees left the property, Benta inspected the wine storage area and noticed that the window air conditioner unit was unplugged. Benta plugged the unit back in and estimated that it had been unplugged for about 15 minutes. (Dkt. Nos. 55 at 3; 63-8 at 42). Approximately one month later, Benta called the VIPD and made a criminal report on behalf of Prosser regarding the incident. The Reporting Officer, Melissa Freeman, stated in her report that she advised Benta that the issue was a civil matter and should be addressed in civil court. In her report, she also requested that the case be closed. (Dkt. Nos. 1; 2; 55 at 3). Despite Officer Freeman's report, Officer Cuthbert Cyril, who worked under Benta's direct supervision, continued to investigate the incident. (Dkt. No. 56 at 38). Shortly thereafter, a Virgin Islands Assistant Attorney General ("AAG") on St. Croix issued two "Forthwith Subpoenas" directed at Defendant Antin and another Christie's agent. (Dkt. No. 55 at 3-4, 6). Later, Officer Cyril sent a letter to Mrs. Prosser on the "Office of the Police Commissioner" stationery updating her on the criminal investigation. *Id.* at 4. After the AAG also sent a "Forthwith Subpoena" to Trustee Carroll, Carroll told the Bankruptcy Court that he viewed these actions as an effort by the Prossers and Benta to manipulate local law enforcement to interfere with the Bankruptcy Court's jurisdiction. *Id.* at 4.

In December 2011, the VIPD Acting Police Commissioner informed Benta that a recommendation for Benta's termination had been submitted to the Governor's Office because of his actions relating to the investigation of the July 2011 incident, including the alleged misuse of

---

present at the Estate Shoys property in January 2008 when the Trustee and his agents created an initial inventory of the wines stored on the St. Croix property. (Dkt. No. 14-2 at 6).

Police Commissioner stationery. Benta was suspended without pay by the VIPD. Following grievance hearings, the VIPD and Benta reached a settlement and Benta was reinstated as a VIPD Officer in approximately June 2013. *Id*. at 7; Dkt No. 73-1 at 2.

All of the Estate Shoys wines were subsequently sold under Bankruptcy Court supervision by Trustee Carroll at a price well below the value listed on the Trustee's initial wine inventory. Following an evidentiary hearing, the Prossers were held in contempt by the Bankruptcy Court for violating its Order to preserve the wine collection ("Contempt hearing"). (Dkt. No. 55 at 9). The Bankruptcy Court's Contempt Order and its determination of damages was appealed and affirmed by this Court. *In re Prosser*, 2017 WL 721991 at *15-21. Many of the allegations asserted in the Amended Complaint in this case were raised in pleadings and testimony presented to the Bankruptcy Court at the Contempt hearing. (Case No. 3:2007-ap-03010, Dkt. Nos. 781; 784; 848).

After the Contempt hearing was held, Plaintiffs filed their original Complaint in the instant action. (Dkt. No. 1). The Complaint asserted two claims on behalf of Benta and two on behalf of the Prossers. Benta alleged that Defendants—jointly, individually and/or in conspiracy with others—violated 42 U.S.C. § 1985(1) and caused him to be suspended from the VIPD in violation of his constitutional rights; interfered with his ability to engage in the lawful discharge of his duties; attempted to intimidate him from testifying freely as a witness; and defamed him. Benta also brought a claim for intentional infliction of emotional distress. (Dkt. No. 55 at 7-8).

Similarly, the Prossers alleged in the Complaint that Defendants—individually and as part of a conspiracy with each other and others—intended to harm the Prossers in violation of 42 U.S.C. § 1985 by intimidating Benta from testifying freely in the Bankruptcy proceeding. The Prossers also brought a claim against Defendants for intentional infliction of emotional distress. (Dkt. No. 55 at 8).

Defendants filed Motions to Dismiss asserting various defenses, including lack of subject matter jurisdiction under *Barton v. Barbour*, 104 U.S. 126 (1881) and its progeny ("the *Barton* doctrine"). (Dkt. Nos. 10 at 5; 14; 55 at 8-9). The Court granted the Motions to Dismiss based on *Barton*. (Dkt. No. 55 at 22-23). However, the Court allowed Plaintiffs leave to amend their Complaint to attempt to allege facts that would show that Defendants' actions fell outside of their official roles—*i.e.,* were *ultra vires* acts—and therefore, not within the scope of the *Barton* doctrine. *Id.* at 23-24.

**B.    The Amended Complaint and Motions to Strike**

Plaintiffs subsequently filed their Amended Complaint. (Dkt. No. 56). In addition to adding factual allegations, Plaintiffs added two new Defendants to the case: Rothschild LLP—the law firm at which Defendants Stassen and Geron are employed—and Trustee Carroll. *Id.* at 1, 8-9. In the Amended Complaint, Plaintiffs also significantly altered their claims.

The Amended Complaint now alleges a vast conspiracy—in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and the Virgin Islands Criminally Influenced and Corrupt Organization Act ("CICO"), 14 V.I.C. § 600, *et seq.* According to the Amended Complaint, the conspiracy allegedly was initiated by Prosser's and his businesses' primary creditors and was carried out, in part, by Trustee Carroll and his attorneys and agents. The alleged conspiracy is claimed to have included the July 2011 incident at the Estate Shoys residence involving the wine collection. *Id.* at 4-66.

Plaintiffs weave their conspiracy claims based on allegations that the Estates' primary creditors—namely, the National Rural Utilities Cooperative Finance Corporation, the Rural Telephone Finance Cooperative, and three hedge funds identified as "Greenlight" (collectively "the Creditors")—were seeking to dismantle Prosser's business and personal wealth in retaliation

7

for complaints Prosser made about the operations of the Creditors. *Id*. at 4-7.[5] In furtherance of this conspiracy, Plaintiffs allege that the Creditors helped to select Carroll as the Trustee in Prosser's individual bankruptcy case, thereby making Trustee Carroll financially dependent on them. *Id.* at 13-14. Plaintiffs further allege that the Trustee and his agents furthered this conspiracy by planning—in advance—to reject the Estate Shoys wine collection and by making numerous false statements to the Bankruptcy Court about the incident in order to obtain the Contempt Judgment against the Prossers. *Id.* at 13-34, 45-46. Additional allegations assert that the Creditors bribed unidentified Virgin Islands public officials who thereafter interfered with Benta's criminal investigation of the Estate Shoys incident; that Trustee Carroll and other Defendants made false statements to the Bankruptcy Court regarding the VIPD investigation; and that Defendants improperly discredited Benta's affidavit and deposition testimony regarding the investigation that was presented during the Contempt hearing. According to the Amended Complaint, this was all done in order to obtain the Contempt Judgment against the Prossers. The Creditors further allegedly caused the unnamed public officials to suspend Benta from his employment with the VIPD. *Id.* at 34-44.

---

[5] Prosser and his associates had previously attempted to sue the Creditors under RICO asserting that they were retaliating against Prosser. However, Prosser and his co-plaintiffs were enjoined from bringing these claims because of releases Prosser had signed—as part of a settlement agreement with the Creditors—prior to the filing of the bankruptcy cases. *See In re National Rural Utilities Cooperative Fin. Corp. v. Prosser*, Civil No. 12-155-SRL, 2013 WL 1182220, at *5-6 (D. Del. Mar. 20, 2013), *aff'd* 582 F. App'x 131 (3d Cir. 2014). All or part of Plaintiffs' conspiracy theories—at least those involving the Creditors, bankruptcy officers, federal officials, and Virgin Islands public officials—have been asserted by Prosser in other cases in other courts. One of these courts labeled the conspiracy allegations as "salacious." *Prosser v. Whitaker*, No. 1:17-cv-1662 (TNM), 2018 WL 5923915, at *1 (D.D.C. Nov. 13, 2018).

The Amended Complaint contains six counts. Two counts assert claims for RICO violations under 18 U.S.C. §§ 1962(c) and 1962(d). *Id.* at 54-61.[6] Two counts assert claims for violations of CICO, 14 V.I.C. §§ 605(a) and 605(d). *Id.* at 61-65.[7] Finally, the Plaintiffs reassert claims made in the original Complaint for violations of 42 U.S.C. §§ 1985(1) and 1985(2). *Id.* at 65-69.

Following the filing of Plaintiffs' Amended Complaint, Defendants Stassen and Geron filed an Emergency Motion to Strike Plaintiffs' Amended Complaint. (Dkt. No. 59). These Defendants argue that the Amended Complaint violates this Court's Order allowing Plaintiffs to file an Amended Complaint because it (1) added parties; (2) added new claims; and (3) failed to allege facts that would establish that any of Defendants' acts were *ultra vires* conduct sufficient to avoid the *Barton* doctrine. (Dkt. No. 59). Defendants Christie's Inc., Antin and Nissman joined in the Motion to Strike. (Dkt. No. 64).

Plaintiffs filed a "Resistance to Defendants' Motion to Strike" (Dkt. No. 63) arguing that Defendants' actions were *ultra vires* or otherwise outside the scope of their roles as a Bankruptcy

---

[6] Title 18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Title 18 U.S.C. § 1962(d), in turn, makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this subsection."

[7] Like RICO, 14 V.I.C. § 605(a) makes it unlawful under Virgin Islands law "for any person employed by, or associated with, any enterprise . . . to conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of criminal activity." Title 14 V.I.C. § 605(d), in turn, makes it "unlawful for any person to conspire or attempt to violate, either directly or through another or others, the provisions of section 605, subsections (a), (b), and (c)."

Trustee or his agents. Plaintiffs make several arguments opposing the Motion to Strike—none of which overcome the subject matter jurisdiction defect identified by the Court in its earlier Memorandum Opinion and Order. (Dkt. Nos. 54; 55).

## II.    APPLICABLE LEGAL PRINCIPLES

### A.    Motions to Strike

Rule 12(f) of the Federal Rules of Civil Procedure provides:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

FED. R. CIV. P. 12(f). Motions to Strike under Rule 12(f) are generally viewed with disfavor and should be used sparingly. *See Environ Products, Inc. v. Total Containment, Inc.*, 951 F. Supp. 57, 60 (E.D. Pa. 1996).

Defendants' Motions to Strike seek to strike the Amended Complaint, arguing that it violates the terms of the Court's March 2017 Order. (Dkt. No. 59-1 at 3-6) A Motion to Strike may be granted, within the Court's discretion, where a plaintiff's amended complaint exceeds the scope of the Order allowing the amendment. *See, e.g., U.F.C. W Local 56 Health & Welfare Fund v. J.D.'s Mkt.*, 240 F.R.D. 149, 154 (D.N.J. 2007) (amended pleadings that exceed the scope of amendment allowed by the court may be stricken under Rule 12(f)); *Dover Steel Co., Inc. v. Hartford Acc. & Indem. Co.*, 151 F.R.D. 570, 575-76 (E.D. Pa. 1993) (striking amended pleading which significantly differed from the proposed amendments attached to the Motion to Amend). Likewise, a party's failure to seek leave of court when adding new allegations is grounds for striking those allegations under FED. R. CIV. P. 12(f). *T.J. McDermott Transp. Co, Inc. v. Cummins, Inc.,* Civil No. 14-4209 (WHW) (CLW), 2017 WL 11476192, at *2 (D.N.J. Jan. 17, 2017); *see*

*also Bartels v. Hudson Ins. Co.*, Case No. 05-3890-JLL, 2008 WL 5070660, at *3 (D.N.J. Nov. 24, 2008).

###### B.    The *Barton* Doctrine

Defendants also contend that Plaintiffs' Amended Complaint fails to allege facts sufficient to avoid the application of the *Barton* doctrine. (Dkt. No. 59-1 at 3; 66 at 1-3). Plaintiffs' original Complaint was dismissed by the Court for lack of subject matter jurisdiction under the *Barton* doctrine. (Dkt. Nos. 54; 55).

The Court described the nature and extent of the jurisdictional bar imposed by the *Barton* doctrine in its Memorandum Opinion entered on March 17, 2017. (Dkt. No. 55 at 12-16). In summary, before a lawsuit can be brought against a court-appointed receiver, "leave of the court by which [the receiver] was appointed must be obtained." *Barton*, 104 U.S. at 127. Many courts, including the Third Circuit, have found that the *Barton* doctrine also applies to claims against bankruptcy trustees and their agents. *In re VistaCare Group, LLC,* 678 F.3d 218, 224 (3d Cir. 2012) ("leave of the bankruptcy court is required" before instituting an action against a bankruptcy trustee for "acts done in the trustee's official capacity"). Suits brought in violation of the *Barton* doctrine must be dismissed for lack of subject matter jurisdiction. *Id.* at 225 (absent permission from the appointing court, "no other court would have jurisdiction to hear the suit.").

The *Barton* doctrine contains two limited exceptions: a statutory exception pursuant to 28 U.S.C. § 959(a) and an *ultra vires* exception. The latter exception—which is at issue here[8]—is a common law exception based on the principle that the *Barton* doctrine applies only to acts "done in the trustee's official capacity and within the trustee's authority as an officer of the court." *Allard*

---

[8] There is no claim by Plaintiffs that Defendants' alleged actions fall within the scope of 28 U.S.C. § 959(a).

*v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993). Accordingly, it follows that if a trustee acted beyond the scope of his authority—*i.e., ultra vires*—leave of the appointing court is not required. However, based on the Court's research and the cases cited by the parties, it appears that a trustee has been found to act outside of his/her authority only when the trustee has "seiz[ed] property which is found not to be property of the estate.'" *Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie)*, 716 F.3d 404, 415 (6th Cir. 2013) (citations omitted); *see also Barton*, 104 U.S. at 134 ("if, by mistake or wrongfully, the receiver takes possession of property belonging to another, such person may bring suit therefor against him personally as a matter of right, for in such case the receiver would be acting *ultra vires*.")

As discussed in the Court's March 2017 Memorandum Opinion, a challenge based on lack of subject matter jurisdiction under the *Barton* doctrine constitutes a factual—as opposed to facial—jurisdictional attack on the Complaint. (Dkt. No. 55 at 12-16). It is undisputed here that Plaintiffs did *not* seek permission from the Bankruptcy Court to bring the instant case against Defendants as required by the *Barton* doctrine. Thus, the only "factual" dispute is whether Defendants' actions—as alleged in the Amended Complaint—fall within the *ultra vires* exception to the *Barton* doctrine. *See In re Summit Metals*, 477 B.R. 484, 494 (Bankr. D. Del. 2012) ("Here, the Trustee Defendants' challenge is factual, although there is no dispute that [Plaintiff] failed to request (and receive) [the Bankruptcy] Court's leave before he filed suit" pursuant to *Barton*).

## III.     DISCUSSION

### A.     Compliance with the Court's March 2017 Order

In their Motion to Strike, Defendants assert that Plaintiffs failed to comply with this Court's March 2017 Order granting Plaintiffs leave to file an Amended Complaint to cure the jurisdictional

defect presented by the *Barton* doctrine. (Dkt. Nos. 59-1; 66; 68). Plaintiffs were granted permission by the Court to plead additional facts, if any, to establish that Defendants' conduct fell outside their official roles as the Bankruptcy Trustee and his agents. (Dkt. No. 55 at 23-24). The Court agrees that Plaintiffs failed to comply with the Court's Order.

### 1. Plaintiffs' Broad-Based Amended Complaint

In response to the Court's March 2017 Order, Plaintiffs filed a 66-page Amended Complaint that not only added new factual allegations, but added two new defendants and completely revamped the legal theories asserted. Plaintiffs' Amended Complaint appears to be based on the misguided premise that the Court's Order granted them unlimited license to amend their claims. A plain reading of the Court's Order in conjunction with the Memorandum Opinion filed contemporaneously therewith quickly undermines this unfounded premise.

The March 2017 Order addressed two motions to dismiss filed by Defendants Geron and Stassen (Dkt. No. 9) and Defendants Nissman and Christie's, Inc. (Dkt. No. 14), respectively. (Dkt. No. 54 at 1). Although both motions were filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the Court addressed and rendered its decision solely on Rule 12(b)(1) subject matter jurisdiction grounds. The Court found that it lacked subject matter jurisdiction over Plaintiffs' claims under the *Barton* doctrine. (Dkt. No. 55 at 10-23).

In an apparent attempt to justify their broad-based Amended Complaint, Plaintiffs argue that the Court's March 2017 Order had "no scope limitation." (Dkt. No. 63 at 5). In support of this proposition, Plaintiffs claim that the Court stated that it was granting two motions—one of which was Plaintiffs' request to amend the Complaint. *Id*. at 2, 6. Plaintiffs' selective and tortured reading of the Court's Memorandum Opinion is belied by the plain language of the Opinion which refers explicitly to the two motions to dismiss filed by Defendants as the motions that the Court was

granting based on lack of subject matter jurisdiction.[9] While the Court did accede to Plaintiffs' alternative request to amend their complaint to allege additional facts to support a claim that Defendants' actions fell outside their official roles—*i.e.*, that their actions were *ultra vires, id.* at 24—there is simply no basis for concluding that the Court granted Plaintiffs unlimited license to do a virtual rewrite of their Complaint.[10] Plaintiffs' attempt to read the Court's March 2017 Order accompanying the Memorandum Opinion—which specifically granted the two motions to dismiss and provided a deadline by which Plaintiffs could amend their Complaint (Dkt. No. 54 at 2)—as having "no scope limitation" (Dkt. No. 63 at 5), together with their tortured interpretation of the Memorandum Opinion, is rejected by the Court.

## 2. Plaintiffs' Rule 15 Arguments

In a further attempt to justify their broad-based Amended Complaint, Plaintiffs assert that they were entitled to amend their Complaint "as a matter of right" under FED. R. CIV. P. 15(a)(1), even without the March 2017 Order. (Dkt. No. 63 at 6-7). The Court finds no factual or legal basis to support this assertion.

---

[9] After specifically identifying the two motions to dismiss filed by Defendants that were before the Court, the Opinion states: "The two motions assert the same legal bases for dismissal, and thus the Court will address the filings together. For the reasons that follow, the Court will grant both motions, dismiss the Complaint for lack of subject matter jurisdiction, and permit Plaintiffs to file an Amended Complaint." (Dkt. No. 55 at 2).

[10] The Court explained that Plaintiffs' suggested amended allegations of additional misconduct by Defendants while acting in their various Bankruptcy roles "would not bring their actions within the *ultra vires* exception . . . and would be futile." (Dkt. No. 55 at 24). However, due to the lack of clarity of the exact amendments Plaintiffs proposed, the Court permitted Plaintiffs an opportunity to amend their Complaint to allege facts sufficient to fall within the *ultra vires* exception. *Id.*

Plaintiffs' original Complaint was filed on July 29, 2013 and the Defendants' respective Motions to Dismiss were filed on August 26, 2013 and September 11, 2013. (Dkt. Nos. 1; 9; 14). Under Rule 15(a)(1), Plaintiffs would have had the ability to file an amended complaint—without leave of court—if the amended complaint was filed within 21 days of the service of the Motions to Dismiss. Plaintiffs' Amended Complaint, filed on March 24, 2017, clearly does not qualify as an amended pleading filed "as a matter of course." FED. R. CIV. P. 15(a)(1).

Plaintiffs also cite to the general principle under Rule 15 that leave to amend "shall be freely given." (Dkt. No. 63 at 7). They cite to cases recognizing that when a court dismisses civil rights claims and/or claims filed by pro se parties under Rule 12(b)(6), it generally is considered an abuse of discretion to deny the plaintiffs leave to amend their complaint to attempt to state a claim. *See Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 657 (3d Cir. 2003); *Dist. Council 47, Am. Fed. of State, County & Mun. Employees v. Bradley*, 795 F.2d 310, 316 (3d Cir. 1986). (Dkt. No. 63 at 7). This argument, however, ignores the fact that this Court's March 2017 Order dismissed the Complaint for lack of *subject matter jurisdiction* under Rule 12(b)(1), not for failure to state a claim under Rule 12(b)(6).[11] Moreover, the argument misses the point that the Court *did* in fact grant Plaintiffs leave to amend their complaint—albeit only for purposes of establishing the Court's jurisdiction to hear the matter. Quite clearly, if the Court has no subject matter jurisdiction over the matter, leave to amend for purposes of attempting to state a claim—an issue that the Court never reached because of the subject matter jurisdiction defect—would be a futile act. Accordingly, Plaintiffs' Rule 15 arguments are baseless and will be rejected.

---

[11] Indeed, the Court specifically stated: "Because the Court finds that it lacks subject matter jurisdiction, it does not reach Defendants' Rule 12(b)(6) arguments for dismissal." (Dkt. No. 55 at 23 n.8).

B.        Applicability of the *Barton* Doctrine

Defendants also move to strike the Amended Complaint because Plaintiffs failed to make allegations that would bring Defendants' conduct within the *ultra vires* exception to the *Barton* doctrine. Because this argument more aptly asserts that, like the original Complaint, the Court lacks subject matter jurisdiction because of the *Barton* doctrine, the Court will treat this portion of the Motion to Strike as a renewed Motion to Dismiss under Rule 12(b)(1). In that regard, the Court agrees that, even when one overlooks the fact that the Amended Complaint goes far beyond what was authorized by the Court, the Amended Complaint is still subject to dismissal under the *Barton* doctrine because Plaintiffs' claims are inextricably tied with the actions taken by Trustee Carroll and his Court-appointed agents in seeking to collect and liquidate Estate assets under the supervision of the Bankruptcy Court.

Plaintiffs make several assertions in the Amended Complaint[12] and their briefing in an attempt to mold their claims as *ultra vires* conduct and to assert that the policies underlying *Barton* do not apply. For example, Plaintiffs expressly state that they "waive any right they may have of recovery from or against the Jeffrey J. Prosser Chapter 7 Bankruptcy Estate." (Dkt. No. 56 at 2). At that same time, however, Plaintiffs claim that success on their claims here would entitle the Prossers to set aside the Contempt Judgment entered by the Bankruptcy Court and affirmed by this Court. *Id*. at 53. Plaintiffs also assert that Defendants' "pattern of criminal acts" were "clearly outside the scope of the Bankruptcy Court's Order." *Id.* at 3. Such an assertion appears to be based on the mistaken premise that by merely labeling the Defendants' actions as part of a "criminal conspiracy," Plaintiffs can avoid the *Barton* doctrine. Plaintiffs further claim that Defendants

---

[12] The first several pages of the Amended Complaint are written in a narrative style and appear much like a Memorandum. (Dkt. No. 56 at 1-7).

violated the Bankruptcy Court's "explicit order" which permitted Defendants "only to pick-up and secure" the wines on St. Croix. (Dkt. No. 63-16 at 8). In addition to the absence of any citation to the "explicit order" that Defendants allegedly violated, this Court previously rejected Plaintiffs' argument in its March 2017 Memorandum Opinion based on the Bankruptcy Court's "explicit acknowledgement that Christie's had reserved the right to inspect the wines 'prior to taking them for sale . . .'" (Dkt. No. 55 at 18-19).

Plaintiffs also rely on the misguided premise that the *Barton* doctrine applies only when trustees and their agents are alleged to have committed unintentional, negligent acts, but not intentional or "unlawful" actions. (Dkt. No. 63-16 at 5-7). Appellant's sophistic argument—that merely alleging that the trustee's conduct was intentional, unlawful or criminal renders the alleged conduct *ultra vires*—has been rejected by numerous courts. *See, e.g., Satterfield v. Malloy*, 700 F.3d 1231, 1236 (10th Cir. 2012) ("Regardless of the manner in which a plaintiff denominates his claim, courts applying the *Barton* doctrine must look to the substantive allegation to determine whether a claim is related to the trustee's bankruptcy duties"); *Lawrence v. Goldberg*, 573 F.3d 1265, 1268, 1271 (11th Cir. 2009) (suit against trustee and his professionals—alleging they violated wiretapping laws, RICO, and the Fair Debt Collection Practices Act in seizing property— falls within the *Barton* doctrine); *Kaul v. Fed. of State Medical Bds*, No. 19-cv-3050-TSC, 2021 WL 1209211, at *12-13 (D.D.C. Mar. 31, 2021) (*Barton* doctrine applied even when a trustee is alleged to have engaged in racketeering, bribery or conspiracy, or acted with other improper motives); *Sharif v. Fox* (*In re Sharif*), ___ B.R. ___, 2021 WL 1345719, at * 7 (Bankr. N.D. Ill. Apr. 9, 2021) (debtor pursuing RICO claim against trustee and his counsel must obtain leave of the Bankruptcy Court under *Barton*); *Johnson-Landry v. JP Morgan Chase*, No. 19-cv-3401-ELR-WEJ, 2020 WL 3400191, at *2 (N.D. Ga. Feb. 28, 2020) (debtor's claims against Trustee for RICO

violations, breach of fiduciary duty and civil conspiracy claims properly dismissed under Barton). *Howell v. Adler*, No. 16-14141, 2017 WL 1064974, at *2 (E.D. La. Mar. 21, 2017) (creditor's RICO claim and state law claims alleging civil conspiracy, abuse of process, defamation, and tortious interference against bankruptcy trustee barred by *Barton* doctrine); *Jay J. Lin, P.A. v. Neuner* (*In re Lin*)*,* Civil No. 14-5230, 2015 WL 1736500, at *6 (D.N.J. Apr. 16, 2015) (debtor's action against trustee, his attorneys, and bank—alleging illegal conduct and extortion—violated the *Barton* doctrine); *Reinert v. Bould* (*In re Reinert*), No. 15-cv-0542, 2015 WL 6760510, at *4 (W.D. Pa. Nov. 5, 2015) (complaint alleging that trustee and his agents "engaged in a 'scam' to 'deprive the bankruptcy estate(s) of assets'" fell within *Barton* doctrine); *Lunan v. Jones* (*In re Lunan*), 489 B.R. 711, 726 (Bankr. E.D. Tenn. 2012) (allegations of fraud or malfeasance by the trustee and his agents while taking possession of and selling bankrupt's assets do not remove the presumption they were acting within their official duties). In other words, regardless of the motives ascribed to, or claimed illegality of, the conduct of the court-appointed officials, as long as their conduct is attributable to their functions in the bankruptcy process and are done under the Bankruptcy Court's supervision, the *Barton* doctrine applies.

In this case, all of Plaintiffs' allegations are directly tied to the Trustee's pursuit of assets declared by the Bankruptcy Court to be Estate property; the collection and sale of those assets; and the bankruptcy hearings relating to Trustee Carroll's allegations that the Prossers damaged those assets. Plaintiff Benta's claims relate to his response to the conduct of the Trustee's agents at Estate Shoys while they were inspecting Estate assets; his alleged involvement in a criminal investigation of those actions; and his affidavit and testimony in the Bankruptcy Court. These matters were raised in the Bankruptcy Court's Contempt proceeding or are related to matters that were so

raised.[13] The significant relationship between the allegations in the Amended Complaint and matters previously raised in the bankruptcy proceeding further confirms the unmistakable connection between Plaintiffs' claims and the Trustee and his agents' bankruptcy-related functions. In short, as with Plaintiffs' original Complaint, the Amended Complaint fails to allege facts sufficient to fall within the *ultra vires* exception to the *Barton* doctrine.

### C. Bankruptcy Court Jurisdiction

A primary focus of Plaintiffs' response in opposition to the Motion to Strike is an attack on the *Barton* doctrine itself. (Dkt. Nos. 63 at 2; 63-16).[14] Plaintiffs assert that despite the Third Circuit's application of the *Barton* doctrine in claims against Bankruptcy Trustees, *In re VistaCare Group, LLC*, 678 F.3d at 232, the Bankruptcy Court, as a non-Article III court, cannot address their claims under *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982). (Dkt. No. 63 at 3-4). Based on this purported lack of subject matter jurisdiction by the Bankruptcy Court over the *merits* of their claims,[15] Plaintiffs leap to the conclusion that the Bankruptcy Court

---

[13] The Court notes that many of the numerous attachments to Plaintiffs' Resistance to the Motion to Strike were exhibits or testimony taken in connection with the Exemption hearing, the Turnover proceeding, or the Contempt hearing conducted before the Bankruptcy Court. (Dkt. Nos. 63-2; 63-3; 63-4 at 3; 63-5 at 2; 63-7; 63-10; 63-12). Similarly, Plaintiffs' Motion Supplementing the Record includes additional information "presented to the Bankruptcy Court." (Dkt. 73 at 2).

[14] In their filing, Plaintiffs violate LRCi 7.1(d) which limits a motion, opposing response, and reply to a maximum of 20 pages unless leave of Court is obtained. Plaintiffs circumvented this limitation by filing not only their 15-page "Resistance to Defendants' Motion to Strike" and separate 15 page "Statement of Facts," but an additional 31-page Memorandum of Law addressing only the *Barton* doctrine. (Dkt. Nos. 63; 63-2; 63-16).

[15] The Court need not—and does not—address whether the Bankruptcy Court would, in fact, have jurisdiction over the merits of Plaintiffs' claims.

lacks jurisdiction to authorize the pursuit of those claims in another court. (Dkt. Nos. 63 at 2; 63-16). This argument is simply wrong.

Plaintiffs' argument is based upon a fundamental misconstruction of the *Barton* doctrine. The *Barton* doctrine does not require Plaintiffs to pursue their claims against these Defendants in the Bankruptcy Court, nor does it require the Bankruptcy Court to have jurisdiction over the merits of the claims. Rather, *Barton* simply protects the Bankruptcy Court's proceedings by ensuring that the Bankruptcy Court is apprised of the allegations and determines that Plaintiffs' claims against Defendants are not without foundation. *In re VistaCare Group, LLC*, 678 F.3d at 232. If the Bankruptcy Court makes this finding, Plaintiffs may pursue these claims in state or federal courts that may otherwise hear them. Whether the Bankruptcy Court would have jurisdiction to rule on the *merits* of Plaintiffs' claims is a completely different legal issue from seeking permission to pursue their claims against agents of the Bankruptcy Court. (Dkt. No. 63 at 10-11).

Accordingly, the issue is *not* whether the Bankruptcy Court would have subject matter jurisdiction to determine the merits of Plaintiffs' amended claims, but whether Plaintiffs met the condition precedent for this Court's subject matter jurisdiction, *i.e.*, obtaining the Bankruptcy Court's approval to pursue the claims against the Trustee and his agents.[16] Under *Barton*, leave of the bankruptcy court is required to prevent the usurpation of the powers and duties which belong

---

[16] The Court finds significance in the fact that various appellate courts have reviewed a Bankruptcy Court's *Barton* decisions to grant or deny leave to file an action against the Trustee without considering whether the Bankruptcy Court could determine the merits of the underlying claims. *See, e.g., Keitel v. Webber*, (*In re Keitel*), __ F. App'x __, 2021 WL 1511487, at *1 n.3 (11th Cir. 2021) (appeal from bankruptcy court's order denying leave under *Barton* to file malpractice, fraud, extortion and breach of fiduciary duty claims against trustee and appointed professionals); *see also Alexander v. Hedback*, 718 F.3d 762, 767 (8th Cir. 2013) (rejecting argument that *Barton* doctrine was abrogated by Bankruptcy Reform Act of 1978).

exclusively to that Court in overseeing the Estate. *Barton*, 104 U.S. at 136. Another reason is to safeguard the assets of the Bankruptcy Estate from claims outside the bankruptcy proceedings, thereby protecting the Bankruptcy Court's ability "to distribute the trust assets to creditors equitably and according to their respective priorities." *Id.* at 136. "The requirement of uniform application of bankruptcy laws dictates that all legal proceedings that affect the administration of the bankruptcy estate be either brought in the bankruptcy court or with the permission of the bankruptcy court." *In re VistaCare Group*, 678 F.3d at 227-28.

Further, courts have recognized that the Bankruptcy Court has a "strong interest" in protecting the trustee from unjustified personal liability for acts taken within the scope of his duties. *Lebovits v. Scheffel* (*In re Lehal Realty Assocs.*), 101 F.3d 272, 276 (2d Cir. 1996). The trustee is working for the Bankruptcy Court to administer the estate and, if the trustee is forced to defend against "litigants disappointed by his actions on the court's behalf, his work for the court will be impeded." *Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998); *see also In re Crown Vantage*, 421 F.3d 963, 972-73 (9th Cir. 2005).

Plaintiffs' arguments must be rejected because *Barton* does not require the actual suit to be tried in the Bankruptcy Court appointing the trustee; it simply recognizes that the Court with oversight of the Estate and its Trustee should make the determination whether the claims could be pursued elsewhere. 10 COLLIER ON BANKRUPTCY, ¶ 10.01 (2009). Plaintiffs' misconstruction of the *Barton* doctrine—which serves as a foundation of their "Resistance"—renders their attack on the *Barton* doctrine unavailing.

Finally, Plaintiffs argue that their "waiver" of claims against the Estate assets vitiates any need for a *Barton* review—claiming that the assets of the Bankruptcy Estate are not at risk. (Dkt. Nos. 56 at 5; 63-16 at 7-9). Notwithstanding their purported "waiver," however, Plaintiffs also

assert that their "successful prosecution of this action will entitle the Prossers to post-judgment relief setting aside the Bankruptcy Court's [Contempt] sanctions, in total." (Dkt. No. 56 at 53). This, of course, would remove property—the Contempt Judgment against the Prossers—from the Estate and its creditors. Thus, for the Prossers at least, this is an attempt to collaterally attack a Bankruptcy Court decision that was affirmed by this Court on appeal.

Accordingly, despite Plaintiffs' arguments to the contrary, the *Barton* doctrine undisputedly applies in this case. Plaintiffs' failure to comply therewith leaves this Court without subject matter jurisdiction over this matter.

### D. Plaintiffs' Remaining Motions

The remaining motions in this case are Plaintiffs' Motion for Judicial Notice (Dkt. No. 58), Plaintiffs' Motion Supplementing the Record (Dkt. No. 73), and Plaintiffs' Motion for Leave to File Document Under Seal. (Dkt. No. 79).

With respect to Plaintiffs' Motion for Judicial Notice, Plaintiffs ask the Court to take judicial notice of: (1) the District Court's records in *United States v. A. Williams*, Case No. 3:2012-cr-033, including documents filed under seal; (2) the Third Circuit's January 15, 2015 Order filed in *Dawn Prosser, et al. v. National Rural Utilities Cooperative, et al.,* Case No. 13-2076 and submitted to the District Court in the *Williams* criminal case; (3) the Third Circuit's records in *Dawn Prosser, et al. v. National Rural Utilities Cooperative, et al.*, including affidavits filed by the parties*;* and (4) the Prossers' filings and related filings in various cases. Plaintiffs also request access to the sealed records in the *Williams* criminal case. (Dkt. No. 58 at 1-4). Plaintiffs rely on FED. R. EVID. 201. *Id.*

Pursuant to Rule 201(b), a court may take judicial notice of adjudicative facts, *i.e.,* facts adjudicated to the point that the matter is "beyond reasonable controversy." FED. R. EVID. 201(b),

Advisory Committee Note to Subdivision (b). This Rule only permits consideration of facts if they are either matters of common knowledge or "'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Carley v. Wheeled Coach*, 991 F.2d 1117, 1126 (3d Cir. 1993) (court erred in taking judicial notice of the rollover propensity of vehicles with high centers of gravity since the quantity and nature of government tests of such vehicles are not matters of common knowledge nor readily provable). While a court may take judicial notice of the existence and contents of judicial records from prior litigation, it may not make any findings regarding the truth of facts represented in that litigation which were subject to dispute. *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 527 (D. Del. 2008) (citation omitted) (in taking judicial notice of court records, a court may only take judicial notice of the fact of the litigation and the actions of the court).

In view of the foregoing, the Court will grant Plaintiffs' Motion for Judicial Notice, in part, by taking judicial notice of the records in the *Williams* case and other litigation identified by Plaintiffs only to the extent of noting that the litigation occurred and the actions taken by the courts in those cases. However, the Court will deny the Motion to the extent that Plaintiffs ask this Court to accept facts asserted by the parties in those cases, but which were not made a part of those courts' findings. *Trevino*, 583 F. Supp. 2d at 527. Likewise, the Court has reviewed, *in camera*, the sealed records in the *Williams* case and finds that they do not alter the Court's conclusion that the *Barton* doctrine applies in this matter. Accordingly, the Court denies Plaintiffs' request for access to the sealed records in the *Williams* case.

The Court has reviewed the submissions accompanying the Motion Supplementing the Record (Dkt. No. 73) and will grant that Motion, although the Court finds that the additional documents do not aid Plaintiffs' cause.

With regard to Plaintiffs' Motion for Leave to file under Seal (Dkt. No. 79), Plaintiffs stated that they would "file the documents proposed for filing under seal under seal separately at [that] time so that the Court may be informed of the content and need for sealed filing." *Id.* at 1. However, the proposed sealed documents were never presented to the Court, and therefore, the Motion for Leave to File Document under Seal will be denied as moot.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Amended Complaint fails to comply with this Court's March 17, 2017 Order and, in any event, fails to allege *ultra vires* acts by Defendants that would escape the requirements of the *Barton* doctrine. Accordingly, Defendants Stassen and Geron's Motion to Strike and Defendants Christie's, Inc., Antin, and Nissman's Motion to Join in the Motion to Strike (Dkt. Nos. 59; 64) will be granted, and Plaintiffs' Amended Complaint will be dismissed. Plaintiffs' Motion for Judicial Notice (Dkt. No. 48) will be granted to the extent that the Court has considered the court records identified by Plaintiffs, but will deny Plaintiffs' request to take judicial notice of contested and unadjudicated facts asserted in those records. The Court also denies that Motion to the extent that Plaintiffs seek access to sealed records in *United States v. A. Williams*, No. 3:2012-cr-033. (Dkt. No. 58 at 4). Finally, the Court will grant Plaintiffs' Motion Supplementing the Record (Dkt. No. 73), and deny as moot Plaintiffs' Motion for Leave to File Under Seal (Dkt. No. 79).

An appropriate Order accompanies this Memorandum Opinion.

Date: June 21, 2021                                   _____/s/_____
                                                      WILMA A. LEWIS
                                                      District Judge

24